1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 EASTERN DISTRICT OF CALIFORNIA

10

11 | JOHN DOE, | Case No. 1:25-cv-00506-SAB-HC

12 |       Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF

13 |     v. | HABEAS CORPUS, GRANT RESPONDENT'S MOTION TO DISMISS

14 | TONYA ANDREWS, et al., | AND STRIKE UNLAWFULLY NAMED RESPONDENTS, DENY RESPONDENT'S

15 |       Respondents. | MOTION TO DISMISS, AND DIRECT RESPONDENT TO PROVIDE PETITIONER

16 | | WITH BOND HEARING BEFORE IMMIGRATION JUDGE

17 | | (ECF Nos. 11, 14)

18 | |

19 | | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE

20

21      Petitioner, represented by counsel, is an immigration detainee proceeding with a petition

22 for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

23 **I.**

24 **BACKGROUND**

25      Petitioner came to the United States in the 1990s and became a lawful conditional

26 permanent resident in 1998. Those conditions were removed in 2000. (ECF No. 1 at 8.[1])

27 Petitioner was charged in federal court with possession of a controlled substance with intent to

28 ───────────────

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

1

distribute, took a plea, and spent ten years in federal prison. Petitioner completed his imprisonment term at the beginning of 2022 and returned to Northern California, where one of his sons lives. (ECF No. 1 at 9.)

On April 16, 2024, the Department of Homeland Security ("DHS") commencing removal proceedings against Petitioner by filing a Notice to Appear ("NTA"), alleging that Petitioner's conviction under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) rendered him removable under Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii) for having been convicted of an aggravated felony and INA § 237(a)(2)(B)(i) for having been convicted of a controlled substance offense. That same day, immigration authorities arrested Petitioner at his home and transferred him to Golden State Annex. (ECF No. 1 at 10.)

At the first master calendar hearing in removal proceedings on April 29, 2024, Petitioner received a continuance to seek counsel. (ECF No. 1 at 10; ECF No. 1-2 at 2.) At the second master calendar hearing, Petitioner's *pro bono* counsel requested and received a continuance to obtain relevant documents, review matters, and consult with Petitioner prior to entering pleadings to the NTA. (ECF No. 1 at 11; ECF No. 1-2 at 2–3.) At the third master calendar hearing, Petitioner entered pleadings to the NTA and the immigration judge ("IJ") found him removable based on his criminal conviction and ordered him removed. Petitioner indicated that he would seek deferral of removal pursuant to the Convention Against Torture ("CAT"), and the IJ ordered Petitioner to submit his application for relief by August 27, 2024. (ECF No. 1 at 11; ECF No. 1-2 at 3.)

The IJ set an evidentiary hearing on Petitioner's application for relief for October 24, 2024. (ECF No. 1 at 11; ECF No. 1-2 at 3.) Petitioner's counsel agreed to reschedule the evidentiary hearing to November 26, 2024, as the original hearing slot had been double booked and no earlier hearing dates were available. (ECF No. 1 at 11; ECF No. 1-2 at 3.) The hearings took place on November 26, 2024, December 10, 2024, January 8, 2025, and January 29, 2025. (ECF No. 1 at 11; ECF No. 1-2 at 3–4.) On February 11, 2025, the IJ issued a written decision finding that Petitioner was entitled to deferral of removal pursuant to CAT. (ECF No. 1 at 12.) DHS appealed the decision to the Board of Immigration Appeals ("BIA"). The parties' appeal

briefs were due on May 21, 2025. (ECF No. 1 at 13.) The matter is currently pending before the BIA. (ECF No. 14 at 2; ECF No. 18 at 8; ECF No. 18-1 at 2.)

On April 29, 2025, Petitioner filed the instant petition for writ of habeas corpus, challenging his prolonged immigration detention on procedural due process grounds. (ECF No. 1.) On May 20, 2025, Respondents filed a motion to dismiss and strike unlawfully named Respondents. (ECF No. 11.) On June 30, 2025, Respondents filed a motion to dismiss and response to the petition. (ECF No. 14.) On July 21, 2025, Petitioner filed a traverse and opposition to the motion to dismiss. (ECF No. 18.)

**II.**

**DISCUSSION**

**A.  Proper Respondents**

Respondents move to dismiss and strike unlawfully named Respondents, arguing that "following *Doe v. Garland* and the plain text of § 2241 and § 2242, the facility administrator is the sole lawful party opponent." (ECF No. 11 at 3.) "Petitioner acknowledges that pursuant to the Ninth Circuit's recent decision in *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024), Respondent Tonya Andrews is the proper respondent of his habeas petition because she is the de facto warden of the facility at which he is detained." (ECF No. 16 at 2.) "Petitioner maintains that *Doe* was wrongly decided and notes for the Court that the time for filing a petition for writ of certiorari in that case has not yet run[,]" and "defers to the Court on this matter." (Id.)

"[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024).

> The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; see also § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained"). The consistent use

1
2

of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition.

3    _Padilla_, 542 U.S. at 434. _Accord Doe_, 109 F.4th at 1195 ("The plain text of the federal habeas

4    implementation provision delineates that petitions must include the name of 'the' person

5    maintaining custody over the petitioner, _id._, implying that there is typically only one proper

6    respondent to a habeas petition."); _id._ ("Congress chose to use a definite article, 'the,' to make

7    clear that only one person can be said to maintain custody over the detained petitioner, and that

8    person is the proper respondent to a core habeas challenge.").

9         Based on the foregoing, the Court finds that Tonya Andrews, the facility administrator of

10    Golden State Annex, is the proper Respondent in this matter. Accordingly, the Court

11    recommends that Respondent's motion to dismiss and strike unlawfully named Respondents be

12    granted.

13         **B.  Overview of Caselaw Regarding Immigration Detention Statutes**

14         An intricate statutory scheme governs the detention of noncitizens during removal

15    proceedings and after a final removal order is issued. "Where an alien falls within this statutory

16    scheme can affect whether his detention is mandatory or discretionary, as well as the kind of

17    review process available to him if he wishes to contest the necessity of his detention." _Prieto-_

18    _Romero v. Clark_, 534 F.3d 1053, 1057 (9th Cir. 2008).

19         "Four statutes grant the Government authority to detain noncitizens who have been

20    placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection

21    A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." _Avilez v. Garland_, 69 F.4th

22    525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in

23    removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'" _Id._

24    (alteration in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is

25    discretionary" and "provides for release on bond or conditional parole." _Id._ "Subsection C

26    provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take

27    into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated

28    offense." _Id._ at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)). "[D]etention under

Subsection C is mandatory," and "[r]elease under Subsection C is limited to certain witness protection purposes." Avilez, 69 F.4th at 530. "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31.

"[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010)). In Zadvydas v. Davis, 533 U.S. 678 (2001), two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the

Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter").[2] However, Justice Kennedy's concurring opinion, which created the majority rejecting the facial challenge to mandatory detention under § 1226(c), specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

In the Rodriguez class action, noncitizens "challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).[3] Rodriguez II, 715 F.3d at 1138–44. In Rodriguez III, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)).

---

[2] "Thirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors.'" Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted). Although the "Supreme Court had inferred from the government's brief in Demore that in cases in which the alien appeals, the time of detention was 'about five months,'" the government's 2016 letter clarified that for years 1999–2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Id. (citations omitted).

> [I]n cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in Demore. The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days.

Rodriguez, 2019 WL 7491555, at *5 (citations omitted).

[3] In Singh, the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh, 638 F.3d at 1208. Due process also requires a contemporaneous record of the bond hearings, such as a transcript or audio recording. Id.

1    In <u>Jennings v. Rodriguez</u>, 583 U.S. 281 (2018), the Supreme Court rejected the Ninth

2    Circuit's interpretation that §§ 1225(b) and 1226(c) included "an implicit 6–month time limit on

3    the length of mandatory detention" and reversed <u>Rodriguez III</u>, holding that the Ninth Circuit

4    misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a)

5    to "periodic bond hearings every six months in which the Attorney General must prove by clear

6    and convincing evidence that the alien's continued detention is necessary." <u>Jennings</u>, 583 U.S. at

7    296, 304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the]

8    constitutional arguments on their merits." <u>Id.</u> at 312. The Ninth Circuit, in turn, remanded the

9    case to the district court to consider the constitutional arguments in the first instance, but noted

10   that it had "grave doubts that any statute that allows for arbitrary prolonged detention without

11   any process is constitutional or that those who founded our democracy precisely to protect

12   against the arbitrary deprivation of liberty would have thought so." <u>Rodriguez v. Marin</u>, 909 F.3d

13   252, 255, 256 (9th Cir. 2018).

14       Following <u>Jennings</u>, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require

15   a bond hearing before an IJ after six months of detention for an alien whose release or removal is

16   not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a

17   bond hearing to justify an alien's continued detention." <u>Aleman Gonzalez v. Barr</u>, 955 F.3d 762,

18   766 (9th Cir. 2020). The Supreme Court reversed on other grounds, <u>Garland v. Aleman</u>

19   <u>Gonzalez</u>, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising

20   from the Third Circuit, *Johnson v. Arteaga-Martinez*, [596] U.S. [573], 142 S. Ct. 1827, 213

21   L.Ed.2d 125 (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory

22   interpretation in *Aleman Gonzalez*," <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1201 (9th Cir.

23   2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the

24   Government to provide bond hearings before immigration judges after six months of detention,

25   with the Government bearing the burden of proving by clear and convincing evidence that a

26   detained noncitizen poses a flight risk or a danger to the community," <u>Arteaga-Martinez</u>, 596

27   U.S. at 581. <u>Arteaga-Martinez</u> declined to reach the constitutional claims. <u>Id.</u> at 583.

28   ///

7

1    "[A]fter the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remain[ed]

2    undetermined whether the Due Process Clause requires additional bond procedures under *any*

3    immigration detention statute" until the Ninth Circuit's decision in <u>Rodriguez Diaz</u>, which

4    concerned a petitioner detained pursuant to 8 U.S.C. § 1226(a) who sought a second bond

5    hearing before an IJ at which the government would bear the burden of proof by clear and

6    convincing evidence. <u>Rodriguez Diaz</u>, 53 F.4th at 1201, 1193. The Ninth Circuit held that "due

7    process does not require the procedures Rodriguez Diaz would have us impose" because

8    "Section 1226(a) offers substantial procedural protections to detained persons, and Rodriguez

9    Diaz has not shown that these procedures violate due process, either facially or as applied." <u>Id.</u>

10    Here, Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). The Ninth

11    Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens

12    detained under 8 U.S.C. § 1226(c). <u>See</u> <u>Martinez v. Clark</u>, 36 F.4th 1219, 1223 (9th Cir. 2022)

13    ("Whether due process requires a bond hearing for aliens detained under § 1226(c) is not before

14    us today. And we take no position on that question."), <u>vacated and remanded on other grounds</u>,

15    144 S. Ct. 1339 (2024); <u>Avilez</u>, 69 F.4th at 538 (declining to make a determination on whether

16    due process required a bond hearing for noncitizen detained under § 1226(c) and remanding to

17    district court for consideration of due process claim). However, the Ninth Circuit has recognized

18    that "district courts throughout this circuit have ordered immigration courts to conduct bond

19    hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and

20    noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending

21    removal proceedings, without a bond hearing, will—at some point—violate the right to due

22    process.'" <u>Martinez</u>, 36 F.4th at 1223 (citation omitted).

23    **C. Procedural Due Process**

24        1. <u>Motion to Dismiss</u>

25    Respondent contends that "Petitioner's detention is now, and foreseeably through BIA

26    proceedings, constitutional because it continues to serve legitimate congressionally mandated

27    goals with a definite end in sight." (ECF No. 14 at 2–3.) Respondent argues that because

28    "Petitioner is only detained in furtherance of his own goal to challenge his deportation via

continued pursuit of his deferral application," "there is no evidence his detention during his civil removal proceedings is motivated for punitive reasons or that his detention otherwise fails to serve immigration purposes," "it is wrong to conclude such orderly proceedings – with an end in sight – are unreasonably prolonged as a substantive due process (constitutional) violation." (ECF No. 14 at 3.) Petitioner is not pursuing a substantive due process claim but rather a procedural due process claim. (ECF No. 1 at 27.) As to Respondent's claim that "Petitioner is only detained in furtherance of his own goal to challenge his deportation via continued pursuit of his deferral application," (ECF No. 14 at 3), the Court notes that it is the government that has pursued an appeal with the BIA after the IJ granted Petitioner deferral of removal.

Demore rejected a *facial* challenge to mandatory detention under 8 U.S.C. § 1226(c) and "said nothing about whether due process may *eventually* require a hearing." Black v. Decker, 103 F.4th 133, 149 (2d Cir. 2024). In Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court explicitly stated that as-applied constitutional challenges to 8 U.S.C. § 1226(c) are not foreclosed. Preap, 586 U.S. at 420. Therefore, Demore does not preclude relief.

Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b), the First, Second, and Third Circuits have found that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]." Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021) (alterations in original) (citation omitted). Accord Black, 103 F.4th at 138 ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209–10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Contra Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024). Additionally, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at

*6 (W.D. Wash. May 23, 2019) (citation omitted), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

Based on the foregoing, the Court will follow this line of cases and find that unreasonably prolonged mandatory detention under 8 U.S.C. § 1226(c) without an individualized bond hearing violates due process. Accordingly, the Court recommends that Respondent's motion to dismiss the petition be denied. The Court now turns to whether Petitioner's detention has become unreasonably prolonged such that due process requires a bond hearing.

2. *Lopez* Test

Courts in this circuit have taken various approaches to determining whether procedural due process requires bond hearing in a particular case. See Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (six-month bright-line rule in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (six-factor test that considers "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (eight-factor test that considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in addition to the six factors set forth above in § 1226(c) context (alteration in original)), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying Mathews v. Eldridge test to petitioner's due process claim requesting initial bond hearing in § 1226(c) context).

In the petition, Petitioner applies the Mathews v. Eldridge, 424 U.S. 319 (1976), test. (ECF No. 1 at 20.) Respondent addresses the Mathews factors in the motion to dismiss but argues that this Court "should follow its own precedent rejecting utilization of a multi-factor balancing (*Mathews*) test to assess so-called as-applied due process violation claims," citing to

Keo v. Warden, No. 1:24-cv-00919-HBK (HC), 2025 WL 1029392, (E.D. Cal. Apr. 7, 2025). (ECF No. 14 at 4.) Keo is not binding in this matter. See Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)).

This Court previously found that "[t]o determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (noting Mathews factors more suited to determining whether due process requires a second bond hearing and rejecting other multi-factor tests). The Court will apply the three Lopez factors.

### a. Total Length of Detention to Date

Petitioner has been in immigration detention since April 16, 2024—approximately sixteen months. Courts have found shorter lengths of mandatory immigration detention without a bond hearing to be unreasonable. See, e.g., Black, 103 F.4th at 137–38 (affirming district court judgment ordering bond hearing for petitioner detained seven months); Perera v. Jennings, No. 21-cv-04136-BLF, 2021 WL 2400981 (N.D. Cal. June 11, 2021) (granting TRO and ordering individualized bond hearing for petitioner detained almost two months); Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1, 11 (S.D.N.Y. May 23, 2018) (granting preliminary injunction and ordering individualized bond hearing for petitioner detained more than eight months); Jarpa v. Mumford, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (granting habeas relief and ordering individualized bond hearing for petitioner detained nearly eleven months). But see De Oliveira Viegas v. Green, 370 F. Supp. 3d 443, 448–49 (D.N.J. 2019) ("As a general matter, courts in this District have found detention for a year, or just over a year, insufficient to support an as-applied challenge to a § 1226(c) detention post-Jennings.").

"In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" Gonzalez v. Bonnar, No. 18-cv-05321-

1  JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (alteration in original) (quoting <u>Muse v.</u>

2  <u>Sessions</u>, 409 F. Supp. 3d 707, 716 (D. Minn. 2018)). Here, Petitioner has been detained for one

3  year and four months. Accordingly, the Court finds that the total length of detention factor

4  weighs in favor of Petitioner.

5                    **b.  Likely Duration of Future Detention**

6        "[A]s have nearly all the other courts to consider this issue . . . the starting point of the

7  analysis is the length of detention—both how long the petitioner has been detained and *how long*

8  *the detention is likely to last.*" <u>Gonzalez</u>, 2019 WL 330906, at *5 (emphasis added) (collecting

9  cases). "When the alien's removal proceedings are unlikely to end soon, this suggests that

10  continued detention without a bond hearing is unreasonable." <u>German Santos</u>, 965 F.3d at 211.

11        Here, the government's appeal of the IJ's decision granting Petitioner's application for

12  deferral of removal pursuant to CAT is still pending. (ECF No. 14 at 2; ECF No. 18 at 8; ECF

13  No. 18-1 at 2.) Petitioner's immigration attorney has submitted a declaration stating:

14           Based on my experience and that of my office, the BIA takes approximately four
             to six months to adjudicate appeals where the noncitizen is detained. After the
15           BIA issues a decision, Mr. Doe's detention may last for many more months, as it
             will either be remanded to the Immigration Court for further factfinding or—if the
16           BIA affirms DHS's appeal and reverses the immigration judge's decision—will
             be reviewed by the Ninth Circuit in the likely event that Mr. Doe pursues a
17           petition for review. He faces months of additional detention while awaiting a
             decision, and potentially further protracted proceedings depending on how the
18           appeal is resolved.

19  (ECF No. 1-2 at 5.)

20        Although future events are difficult to predict, the Court nevertheless finds that the

21  pending appeal before the BIA and possible remand to the immigration court for further

22  factfinding or possible judicial review by the Ninth Circuit will be sufficiently lengthy such that

23  this factor weighs in favor of Petitioner. <u>See</u> <u>German Santos</u>, 965 F.3d at 212 (finding appeal of

24  cancellation of removal order with the BIA "could take months" and potential review in the

25  Third Circuit "would add months more in prison" such that "the likelihood that [petitioner's]

26  detention will continue strongly supports a finding of unreasonableness"); <u>Banda</u>, 385 F. Supp.

27  3d at 1119 (finding appeal of removal order with the BIA and review in the Ninth Circuit may

28  take up to two years or longer and favors granting petitioner a bond hearing).

1        **c. Delays in Removal Proceedings Caused by Petitioner and Government**

2        Petitioner requested and received three continuances in immigration court. (ECF No. 1-2

3    at 2; ECF No. 14-1 at 3.) Respondent argues this Court "must give weight to Petitioner's own

4    delay processing his deferral of removal demand (about 7/2024 through 12/2024)." (ECF No. 14

5    at 5.) Respondent does not specify Petitioner's delays, but the time period of July 2024 through

6    December 2024 encompasses the July 12, 2024 master calendar hearing, at which counsel

7    indicated Petitioner would seek deferral of removal under CAT and was granted until August 27,

8    2024 to file an application, in addition to the first two hearing dates on Petitioner's application.

9        "[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding

10   of unreasonably prolonged detention, especially where the Government fails to distinguish

11   between bona fide and frivolous arguments in opposition." Hernandez v. Decker, No. 18-CV-

12   5026 (ALC), 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018). See Liban M.J. v. Sec'y of

13   Dep't of Homeland Sec., 367 F. Supp. 3d 959, 965 (D. Minn. 2019) ("Petitioner is entitled to

14   raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his

15   claim that detention has become unreasonable."); Gonzalez, 2019 WL 330906, at *4 ("The

16   government cites no authority for the proposition that a petitioner who pursues his available legal

17   remedies must forego any challenge to the reasonableness of his detention in the interim and the

18   Court is unaware of any."). Here, Petitioner raised a legitimate defense to removal, as evidenced

19   by the fact that the IJ granted Petitioner's application for deferral of removal.

20       Further, the first hearing date was delayed approximately one month because the original

21   hearing slot had been double booked and no earlier hearing dates were available. (ECF No. 1-2 at

22   3.) At the first hearing date on November 26, 2024, the government attorney had technical

23   difficulties and refused to narrow issues and witnesses. (Id.) At the second hearing date on

24   December 10, 2024, the government attorney again declined to narrow the issues and a

25   significant portion of the hearing slot was spent on determining whether a possible issue with the

26   digital audio recording machine needed to be resolved. (Id. at 4.) "[T]he operative question

27   should be whether the alien has been the cause of delayed immigration proceedings and, where

28   the fault is attributable to some entity other than the alien, the factor will weigh in favor of

1    concluding that continued detention without a bond hearing is unreasonable." <u>Sajous v. Decker</u>,

2    No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

3         Here, Petitioner requested and received three continuances. Respondent argues this Court

4    "must give weight to Petitioner's own delay processing his deferral of removal demand," (ECF

5    No. 14 at 5), yet ignores the government's own delays, including the fact that the government

6    appealed the IJ's grant of deferral of removal and thus is the current cause of a delay of seven

7    months and counting. Respondent's claim that "Petitioner is only detained in furtherance of his

8    own goal to challenge his deportation via continued pursuit of his deferral application," (ECF

9    No. 14 at 3), is not well taken when the IJ granted Petitioner's deferral application and the

10   government chose to appeal that decision to the BIA. The Court finds that the delay factor is

11   neutral.

12        3.  <u>Weighing the Factors</u>

13        The Court appreciates that the government has a strong interest in enforcing immigration

14   laws, ensuring the presence of noncitizens at their removal proceedings, and protecting the

15   public from danger. However, the "government interest at stake here is not the continued

16   detention of Petitioner, but the government's ability to detain him *without a bond hearing*."

17   <u>Zagal-Alcaraz v. ICE Field Off.</u>, No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar.

18   25, 2020) (emphasis added), <u>report and recommendation adopted</u>, 2020 WL 1855189 (D. Or.

19   Apr. 13, 2020). <u>See</u> <u>Henriquez</u>, 2022 WL 2132919, at *5 ("Although the Government has a

20   strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal

21   orders are promptly executed, the Government's interest in detaining Petitioner without

22   providing an individualized bond hearing is low."). On the other hand, it "is beyond dispute" that

23   Petitioner's interest here is "fundamental." <u>Hernandez v. Sessions</u>, 872 F.3d 976, 993 (9th Cir.

24   2017) (citing <u>Foucha v. Louisiana</u>, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—

25   from government custody, detention, or other forms of physical restraint—lies at the heart of the

26   liberty [the Due Process] Clause protects." <u>Zadvydas</u>, 533 U.S. at 690. Both the length of

27   detention to date, "which is the most important factor," <u>Banda</u>, 385 F. Supp. 3d at 1118,[4] and the

28   ────────────────

[4] <u>Accord</u> <u>German Santos</u>, 965 F.3d at 211 ("The most important factor is the duration of detention.")

1  likely duration of future detention weigh in favor of finding continued detention unreasonable.

2  The delay factor is neutral. Accordingly, the Court finds that Petitioner's continued detention has

3  become unreasonable and due process requires that Petitioner be provided a bond hearing.

4  **D.  Remedy**

5  "The Court finds, consistent with other post-<u>Jennings</u> cases, that the appropriate remedy

6  is a bond hearing before an immigration judge[.]" <u>Lopez</u>, 631 F. Supp. 3d at 882. <u>See</u> <u>Doe v.</u>

7  <u>Becerra</u>, 697 F. Supp. 3d 937, 948 (N.D. Cal. 2023) ("[C]ourts in this Circuit have regularly

8  found that the IJ is the proper authority to conduct bond hearings and determine a detainee's risk

9  of flight or dangerousness to the community." (citing <u>Martinez</u>, 36 F.4th at 1223 ("district courts

10  throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens

11  held for prolonged periods"))); <u>Mansoor v. Figueroa</u>, No. 3:17-cv-01695-GPC (NLS), 2018 WL

12  840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and

13  situated to make neutral administrative determinations about Petitioner's eligibility for release on

14  bond and/or placement in a supervised release program[.]").

15  The Court further finds that "the government must prove by clear and convincing

16  evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and

17  that the bond hearing must comport with the other requirements of <u>Singh v. Holder</u>, 638 F.3d

18  1196, 1208 (9th Cir. 2011). <u>See</u> <u>Martinez v. Clark</u>, 124 F.4th 775, 785 (9th Cir. 2024) (stating

19  that "the BIA properly noted that the government bore the burden to establish by clear and

20  convincing evidence that Martinez is a danger to the community" with respect to a bond hearing

21  for a noncitizen detained under § 1226(c)); <u>Black</u>, 103 F.4th at 159 (affirming district court's

22  order "requir[ing] the government to show at such a bond hearing, by clear and convincing

23  evidence, the need for Black's continued detention" under § 1226(c)); <u>German Santos</u>, 965 F.3d

24  at 214 (holding that in order to justify a noncitizen's continued detention under § 1226(c) "the

25  Government bears the burden of persuasion by clear and convincing evidence. That evidence

26  must be individualized and support a finding that continued detention is needed to prevent him

27  from fleeing or harming the community"); <u>Juarez</u>, 2021 WL 2323436, at *8 (requiring bond

28  hearing to comport with requirements of <u>Singh</u>); <u>Banda</u>, 385 F. Supp. 3d at 1120–21 (same);

1   Djelassi v. ICE Field Off. Dir., 434 F. Supp. 3d 917, 923–24 (W.D. Wash. 2020) (same);

2   Martinez, 2019 WL 5968089, at *11 (same and collecting cases). In the event Petitioner is

3   "determined not to be a danger to the community and not to be so great a flight risk as to require

4   detention without bond," the immigration judge should consider Petitioner's financial

5   circumstances and alternative conditions of release. Hernandez, 872 F.3d at 1000. See Black, 103

6   F.4th at 138 (The district court "correctly directed the immigration judge ("IJ"), in setting his

7   bond and establishing appropriate terms for his potential release, to consider his ability to pay

8   and alternative means of assuring appearance.").

### III.

### RECOMMENDATIONS & ORDER

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.  Respondent's motion to dismiss and strike unlawfully named Respondents (ECF No. 11) be GRANTED.

3.  Respondent's motion to dismiss the petition (ECF No. 14) be DENIED.

4.  Respondent provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," id. at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

Further, the Clerk of Court is DIRECTED to randomly assign this action to a District Judge.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**September 8, 2025**__

STANLEY A. BOONE
United States Magistrate Judge